IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTONIO MACIAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-23-966-SLP |
| | ) |
| OKLAHOMA CVS PHARMACY, | ) |
| LLC, a corporation doing business in | ) |
| Oklahoma, and CVS PHARMACY, | ) |
| INC., | ) |
| | ) |
| Defendants. | |

**O R D E R**

Before the Court is the Motion to Compel Arbitration and to Dismiss Or, in the Alternative, Stay Proceedings, and Brief in Support [Doc. No. 20] filed by Defendants Oklahoma CVS Pharmacy, LLC and CVS Pharmacy, Inc. (collectively, "CVS"). Plaintiff Antonio Macias has responded, *see* [Doc. No. 21], and CVS replied, *see* [Doc. No. 22].

**I.   Background**

As set forth in the Complaint, Plaintiff worked for CVS as a retail employee for about 25 years. [Doc. No. 1] ¶ 10. On the morning of December 26, 2022, Plaintiff was working alone when a man entered the store and brutally beat Plaintiff during a robbery. *Id.* ¶¶ 11–20. The robber eventually fled the scene after exchanging gunfire with a retired police officer who entered the store during the robbery. *Id.* ¶¶ 21–23. Plaintiff was then taken to a nearby hospital where he was treated for "multiple and severe head contusions, bruises to his entire body, and emotional trauma." *Id.* ¶ 24.

Following the robbery, Plaintiff filed a worker's compensation claim. *Id.* ¶ 25. Plaintiff's January 6 paycheck "was reduced by approximately 30% due to his workers compensation claim," so he "was forced to return to work in order to pay his rent, buy food, and pay his bills." *Id.* ¶ 27. The following week, CVS sent him a $5.79 paycheck, which Plaintiff believed failed to account "for all of his holiday pay, sick pay, and bonus pay that he was afforded." *Id.* ¶ 28. Accordingly, he "complain[ed] to management that he was being treated unfairly and requested full wages for the work that he had performed." *Id.* On January 18, Plaintiff was disciplined for applying "excessive coupons in a transaction." *Id.* ¶ 29. He was fired later that month. *Id.* ¶ 31.

Plaintiff filed this action following his termination. He seeks relief for (1) "wrongful termination under the Oklahoma Administrative Workers' Compensation Act," *id.* ¶ 34, and (2) negligence for CVS's failure to schedule a second employee during his December 26 shift, *id.* ¶¶ 41–43.

CVS has moved to compel arbitration for both claims and asks the Court to dismiss or stay this action pending arbitration. *See generally* [Doc. No. 20]. Plaintiff opposes the requested relief, arguing (1) "CVS cannot show that it is entitled to Arbitration," and (2) even if a valid arbitration agreement exists, Plaintiff's claims fall outside of the scope of that agreement. [Doc. No. 21] at 5.

II.    **Governing Law**

The Federal Arbitration Agreement ("FAA") "compels judicial enforcement of a wide range of written arbitration agreements," including those between employees and their employers. *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). The FAA

provides, in relevant part: "an agreement in writing to submit to arbitration an existing controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

Before compelling arbitration, however, "a district court must determine that an agreement to arbitrate exists."  *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997) (citing 9 U.S.C. §§ 3–4).  If a party disputes the existence of such an agreement, the Court employs a burden-shifting framework similar to the one applicable at summary judgment:

> [T]he party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith. When a quick look at the case reveals that no material disputes of fact exist, a district court may decide the arbitration question as a matter of law through motions practice and viewing the facts in the light most favorable to the party opposing arbitration.

*BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017) (internal citations and quotation marks omitted).  There is no "presumption of arbitrability" where the parties dispute "whether there is a valid and enforceable arbitration agreement in the first place."  *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).  If the existence of an arbitration agreement is disputed, the nonmovant should receive the "benefit of all reasonable doubts and inferences that may arise."  *Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1149 (D. Colo. 2012), *aff'd*, 925 F. Supp. 2d 1185 (D. Colo. 2013) (quotation omitted).

The question of whether a valid arbitration agreement exists is governed by state contract law. *See Avedon Eng'g*, 126 F.3d at 1287. Under Oklahoma law, a valid contract is formed when there is (1) "an offer by one party," (2) "an acceptance thereof by the other party," and (3) "the parties' 'mutual consent, or a meeting of the minds on all the essential terms of the contract.'"[1] *S. Cent. Indus. v. Kerrtas Mktg., LLC*, No. CIV-21-802-J, 2022 WL 1518935, at *2 (W.D. Okla. Feb. 7, 2022) (first quoting *Redwine Res., Inc. v. Predator Techs.*, L.L.C., 171 P.3d 330, 334 (Okla. Civ. App. 2007); and then quoting *Young v. Chappell*, 239 P.3d 476, 479 (Okla. Civ. App. 2010)).

### III.   Discussion[2]

#### A.   Existence of Arbitration Agreement

CVS has met its initial burden to show the existence of an arbitration agreement. It has provided an affidavit from Robert Bailey, CVS's Executive Director of Talent Management.[3] *See* [Doc. No. 20-1] at 2–9. As set forth in the affidavit, CVS introduced an arbitration policy in 2014, under which employees and CVS "waive the right to pursue employment-related claims in court, agreeing instead to submit such disputes to binding arbitration." *See id.* at 3, ¶ 6. The relevant portion of the arbitration agreement provides:

---

[1] CVS argues Oklahoma law applies to this dispute—a point which Plaintiff does not contest.

[2] Citations to the parties' briefing reflects the CM/ECF pagination.

[3] Mr. Bailey's affidavit, in turn, includes four attachments: (1) a copy of the arbitration agreement, [Doc. No. 20-1] at 11–14; (2) a copy of the "Arbitration of Workplace Legal Disputes" (Course 800305) PowerPoint presentation, *id.* at 16–36; (3) a copy of the "CVS Health Colleague Guide to Arbitration," which was embedded in the PowerPoint presentation, *see id.* at 38–50; and (4) a copy of Plaintiff's course training history, *id.* at 52–64. Because the affidavit and all four attachments are attached to the Motion as a single exhibit, the Court's citations include both page numbers and, where applicable, paragraph citations.

>**1. Mutual Obligation to Arbitrate.**  Under this Policy, CVS Health (including its subsidiaries) and its Employees agree that any dispute between an Employee and CVS Health that is covered by this Policy ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Policy.  This Policy is an agreement to arbitrate disputes covered by the Federal Arbitration Act (9 U.S.C. §§ 1-16).  Employees accept this Policy by continuing their employment after becoming aware of the Policy.
>
>**2. Claims Covered by This Policy.**  Except as otherwise stated in this Policy, Covered Claims are any and all legal claims, disputes or controversies that CVS Health may have, now or in the future, against an Employee or that an Employee may have, now or in the future, against CVS Health, its parents, subsidiaries, successors or affiliates, or one of its employees or agents, arising out of or related to the Employee's employment with CVS Health or the termination of the Employee's employment.  Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act . . . and other federal, state and local statutes, regulations and other legal authorities relating to employment.

*Id.* at 11–12.

The same year it rolled out this arbitration policy, CVS also provided its employees with an arbitration training course intended to "communicate[] and educate[] employees on CVS's Arbitration Policy."  *Id.* at 4, ¶ 8.  A CVS employee could only complete the course through the company's LEARNet system, which requires each employee to sign in using "a unique log-in credential and personalized password."  *Id.* at 3, 8, ¶¶ 5, 14.  Once logged in, employees were required to view a PowerPoint presentation that included the "CVS Health Colleague Guide to Arbitration."  *Id.* at 5, ¶ 9; *see also id.* at 38–50.  That guide, in turn, included a copy of the arbitration policy.  *Id.* at 5, ¶ 9; *see also id.* at 46–49.

The policy guide detailed an opt-out provision that required employees to send a written opt-out notice within 30 days after "first view[ing] or receiv[ing] the policy." *Id.* at 44.

To finish the course, employees had to view an acknowledgement slide which included the following language:

> By clicking the "Yes" button below, I am acknowledging and agreeing:
>
> - that I have carefully read the [arbitration policy] and understand that it applies to me; . . .
>
> - that I have the opportunity, for a limited time only, to opt out of the Policy and, by doing so, not be bound by its terms;
>
> - that, to opt out, I must mail a written, signed and dated letter, stating clearly that I wish to opt out of this Policy to CVS Health, P.O. Box 969, Woonsocket, RI 02895, which must be postmarked no later than 30 days after the date I first received or viewed a copy of this Policy; . . .
>
> - that my click of the "Yes" button creates an electronic signature that is legally binding.

*Id.* at 35. CVS has provided documentation showing that Plaintiff completed the training on November 7, 2014. *See id.* at 63. According to Mr. Bailey's affidavit, Plaintiff did not mail in an opt-out notice. *See id.* at 8–9, ¶ 17. Based upon this evidence, CVS has satisfied its initial burden to demonstrate the existence of an enforceable arbitration agreement. *Cf. Rahim v. CSAA Ins. Servs., Inc.*, No. CIV-17-220-W, 2017 WL 11727746, at *3 (W.D. Okla. Sept. 29, 2017) (reaching same conclusion where employees were required to log in and click "I agree" to acknowledge acceptance of arbitration agreement).

The burden then shifts to Plaintiff to create a genuine dispute of material fact regarding the existence of the arbitration agreement. His attempts to do so are unavailing. Plaintiff primarily relies on his own declaration, in which he first claims he "ha[s]

absolutely no recollection of" either the arbitration policy itself, or of the Arbitration of Workplace Legal Disputes PowerPoint "as a part of any training that [he] received while working for CVS." [Doc. No. 21-1] ¶ 4. But Plaintiff's mere inability to recall seeing the policy or completing the training is not sufficient to create a genuine issue of fact. *See Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. 2019).

He next claims he "would never have agreed to sign or accept any agreement such as this because [he] ha[s] a long-standing belief in presenting [his] cases to a Court of Law and a Jury, if a dispute arises with [his] employer, and not Arbitration." [Doc. No. 21-1] ¶ 4 (capitalization in original). But CVS has provided undisputed evidence that someone logged in with Plaintiff's username and password completed the training on November 7, 2014.[4] Similarly, it is undisputed that—before completing the training—an employee must open the arbitration policy, view the acknowledgement slide, and verify that (1) he reviewed the policy and understood it applied to him, (2) he could opt out by timely mailing a notice, (3) failing to opt out would oblige him arbitrate "legal claims covered by the Policy," and (4) clicking "Yes" would create a legally binding electronic signature. [Doc. No. 20-1] at 7–8, ¶¶ 12–13. Plaintiff does not claim he mailed an opt-out notice. In light of these undisputed facts, Plaintiff's speculative assertion that he would not have entered into such an agreement is insufficient to create a genuine dispute. *Cf. Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *2 (D. Colo.

---

[4] Plaintiff does not suggest that anyone else had access to his login credentials at this time.

May 21, 2019) (reaching same conclusion where employees asserted "strong belief that they did not assent to arbitration").

Plaintiff also argues there was no "meeting of the minds" because "he did not agree, e-sign, or wet sign" the arbitration agreement. [Doc. No. 21] at 5. But neither the FAA nor Oklahoma law requires a signature to a written arbitration agreement. *See Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973); *Dunbar Eng'g Corp. v. Rhinosystems, Inc.*, 232 P.3d 931, 935 n.9 (Okla. Civ. App. 2010). The Court agrees with CVS that Plaintiff "accepted [the arbitration] agreement by completing the course and clicking "Yes" on the fifth slide and then continuing employment thereafter." [Doc. No. 22] at 6. *Cf. Rahim*, 2017 WL 11727746, at *3 (finding acceptance where employee confirmed that "clicking 'I agree' constitute[d] [his] signature to and acceptance of the agreement").

Finally, Plaintiff challenges the sufficiency of the documents attached to CVS's Motion. He takes issue with the affidavit's use of the more general term "colleagues," arguing "CVS has provided no proof that the slideshow screen shots and policy at its Exhibits A, B, and C are exact replicas of excerpts from the electronic training module that Plaintiff attended on November 7, 2014." [Doc. No. 21] at 5–6. But Mr. Bailey's affidavit—which was made on his "firsthand knowledge," [Doc. No. 20-1] at 2, ¶ 1—belies this assertion. Mr. Bailey specifically verifies that the attachments to his affidavit are true and correct copies of (1) the arbitration policy, *id.* at 3, ¶ 6; (2) the LEARNet PowerPoint course titled "Arbitration of Workplace Legal Disputes (Course No. 800305)," *id.* at 4–5, ¶ 8; (3) the CVS Health Colleague Guide to Arbitration, which employees had to view to

8

complete the training course, *id.* at 5, ¶ 9; and (4) the LEARNet training transcript showing that Plaintiff "completed the training on the Arbitration Policy (800305 Arbitration of Workplace Legal Disputes)" on November 7, 2014, *id.* at 8, ¶ 16.

Although Plaintiff is correct that Mr. Bailey occasionally uses the word "colleagues" to discuss the policy's rollout to CVS employees, it is clear from the context of the affidavit that this group includes Plaintiff. The fact that it also includes other employees does not create a genuine dispute about the existence of the arbitration agreement. Accordingly, Plaintiff has not satisfied his burden under the relevant legal standard. *See BOSC*, 853 F.3d at 1177.

**B.    Scope of the Agreement**

Nevertheless, Plaintiff argues CVS's Motion should be denied because his claims fall outside of the scope of the arbitration agreement. But this issue is not one that the Court can properly determine. When "parties clearly and unmistakably agree[] to arbitrate arbitrability, all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—ha[ve] to be resolved by an arbitrator." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281, 1284 (10th Cir. 2017); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010) (provisions delegating arbitrability disputes to the arbitrator must be enforced unless specifically challenged). But the Court will "not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Belnap*, 844 F.3d at 1281 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (alteration in original).

The Court's initial task, therefore, is to decide whether the parties agreed to delegate

issues of arbitrability to the arbitrator. Their agreement provides, in relevant part:

> Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Policy . . . . The arbitration will be administered by the American Arbitration Association ("AAA") and will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA ("AAA Rules") then in effect.

[Doc. No. 20-1] at 12. Rule 6(a) of the AAA Employment Rules states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." [Doc. No. 22] at 8 (quoting American Arbitration Association, *Employment Arbitration Rules and Mediation Procedures* (effective Nov. 1, 2009), https://www.adr.org/sites/default/files/EmploymentRules_Web_2.pdf). Where, as here, an arbitration agreement includes broad language and incorporates the AAA rules into its terms, the agreement "clearly and unmistakably agreed to submit arbitrability issues to an arbitrator." *Belnap*, 844 F.3d at 1284. The issue of arbitrability, therefore, has clearly and unmistakably been delegated to the arbitrator. *See Belnap*, 844 F.3d at 1283; *see also Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1246 (10th Cir. 2018). Accordingly, this action will be STAYED pending resolution of the arbitration proceedings. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

### IV.     Conclusion

IT IS THEREFORE ORDERED as follows:

1.     The Motion to Compel Arbitration and to Dismiss Or, in the Alternative, Stay Proceedings, and Brief in Support [Doc. No. 20] is GRANTED, as set forth above. Plaintiff's claims against CVS shall proceed to arbitration.

2.     This matter is STAYED pending completion of the arbitration proceedings.

3. The Clerk of Court is directed to administratively terminate this matter until further order of the Court. The termination is without prejudice to the rights of the parties to reopen the case after completion of the arbitration proceeding for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation.

4. The parties shall notify the Court upon completion of the arbitration proceeding by filing a written notice. If, within 30 days after completion of the arbitration proceeding, neither party has moved to reopen the case for the purpose of obtaining a final determination of the litigation, this action will be deemed to be dismissed with prejudice.

IT IS SO ORDERED this 16th day of October, 2024.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE